```
IN THE UNITED STATES DISTRICT COURT FOR THE
         SOUTHERN DISTRICT OF GEORGIA
              AUGUSTA DIVISION
```

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
20 JUN -4 PM 2:43
CLERK J Hodge
SO. DIST. OF GA.

```
HART AGRICULTURE CORPORATION   *
and RICHARD WATSON,            *
                               *
     Plaintiffs,               *
                               *
     v.                        *     CV 120-018
                               *
KEA INVESTMENTS LIMITED,       *
                               *
     Defendant.                *
```

## O R D E R

Before the Court is Plaintiffs Hart Agriculture Corporation and Richard Watson's motion for default judgment (Doc. 17) and motion for preliminary injunction (Doc. 3). For the following reasons, the motion for default judgment is denied without prejudice and the motion for preliminary injunction is denied.

### I.   BACKGROUND

Plaintiff Richard Watson is the founder, president, and sole beneficial owner of Plaintiff Hart Agriculture Corporation ("Hart" or "Hart Agriculture"), a dairy farm located in Waynesboro, Georgia. (See Compl., Doc. 1, ¶¶ 2-3, 21.) Defendant Kea Investments Limited ("Kea") is a British Virgin Island company limited by shares. (See id., ¶ 4.) Plaintiffs initiated this suit to enjoin Kea from enforcing a judgment obtained in the United

Kingdom (the "U.K. Case") that would implicate Plaintiffs. (See id., ¶ 1.)

A. The United Kingdom Judgment

Kea was a plaintiff in the U.K. Case, and Eric Watson – Richard Watson's brother – was a defendant. (See id., ¶ 13.) Kea, through its principal and beneficial owner, Owen Glenn, sued Eric Watson for fraud, breach of fiduciary duty, and other claims over a join venture gone wrong. (See id., ¶¶ 11-15.) However, neither Richard Watson nor Hart were parties to the U.K. Case. (See id., ¶ 16.) In July of 2018, Kea won a judgment in the U.K. case of about $87 million. (See id., ¶ 17.) Kea was also awarded the right to trace funds and assets originating from the transactions giving rise to the U.K. case and act to recover them. (See id.)

Eric Watson has never had any involvement with Hart, and Hart had no part in the transactions giving rise to the U.K. Case nor has it received assets traceable to those transactions. (See id., ¶ 20.)

B. Hart Agriculture, Hart Dairy, and Timothy Connell

Hart Dairy Creamy Corporation ("Hart Dairy") is Hart Agriculture's exclusive buyer of raw milk. (See id., ¶ 22.) Timothy Connell is the owner and CEO of Hart Dairy. (See id.) Neither Connell nor Hart Dairy own or control Hart Agriculture in any way. (See id.)

2

In March of 2019, Kea requested that Connell and "the Hart dairy business" voluntarily subject themselves to United Kingdom jurisdiction or Kea would join Connell and "the Hart dairy business" to the U.K. Case. (See id., ¶ 23.) Apparently, Kea sent these communications under the impression that Connell and Hart Dairy were related to Hart Agriculture. (See id.)

C. Kea's Further Attempts at Enforcement and This Case

On January 21, 2020, Kea notified Connell of its intent to commence enforcement proceedings in the U.K. (See id., ¶ 25.) Kea also submitted an affidavit to the U.K. Court containing information about Eric Watson's representations regarding his alleged interest in Hart Agriculture. (See id.) Based on this information, the Complaint in this case alleges that "[i]t is therefore plain that Kea intends imminently to commence such proceedings in the [U.K.] against Plaintiffs, and the matter is therefore ripe." (Id.) Plaintiffs continue:

> The orders that Kea intends to procure in the U.K. High Court could only be enforceable against Plaintiffs upon subsequent application for such enforcement to a court or courts in the United States, and if successful would affect enforcement *in rem* against assets resident in the United States; enforcement *in personam* against Plaintiffs, also resident in the United States; or both.

(Id., ¶ 26.)

Glenn and Kea have also pursued litigation in California related to the transactions giving rise to the U.K. Case against

3

Eric Watson and others. (See id., ¶¶ 27-28.) Plaintiffs allege, "Kea therefore may, should, and indeed *does already* anticipate proceeding in a United States Court . . . against Plaintiffs here." (Id., ¶ 29 (emphasis in original).)

Plaintiffs, aiming to avoid litigation in the U.K., filed the present suit seeking injunctive and declaratory relief against Kea. Plaintiffs seek a declaratory judgment that they and their assets are not subject to jurisdiction in the High Court of England and Wales and that they are not liable to Kea on the judgment in the U.K. Case. (See id., ¶¶ 34-35.) Plaintiffs also request permanent injunctive relief in the form of an anti-suit injunction prohibiting Kea from proceeding against Plaintiffs or their assets in the High Court of England and Wales. (See id., ¶ 39.)

Plaintiffs filed their Complaint on February 3, 2020, and a motion for preliminary injunction a day later. Because it was not clear that Kea had notice of the motion for preliminary injunction, the Court ordered Plaintiffs to serve the motion on Kea and for Kea to respond. Kea responded to neither the Complaint nor motion, and on April 17, 2020, the Clerk entered Kea's default. Plaintiffs now move for default judgment.

4

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 55, a court may enter default judgment against a defendant when (1) both subject matter and personal jurisdiction exist, (2) the allegations in the complaint state a claim against the defendant, and (3) the plaintiff shows the damages to which it is entitled. See Pitts ex rel. Pitts v. Seneca Sports, Inc., 321 F. Supp. 2d 1353, 1356-58 (S.D. Ga. 2004). "[H]owever, default judgments are generally disfavored." Surtain v. Hamlin Terrace Found., 789 F.3d 1239, 1245 (11th Cir. 2015).

"[A] defendant's default does not in itself warrant the court in entering a default judgment." Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975). Default judgment is merited only "when there is a sufficient basis in the pleadings for the judgment entered." Surtain, 789 F.3d at 1245 (citation and internal quotation marks omitted). And although a "defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact, he is not held to admit facts that are not well-pleaded or to admit conclusions of law." Id. (citation omitted).

### III. JURISDICTION and DISCUSSION

As noted above, a district court must have both personal and subject matter jurisdiction to enter a default judgment. See Pitts, 321 F. Supp. 2d at 1356-58; Sys. Pipe & Supply, Inc. v. M/V VIKTOR KURNATOVSKY, 242 F.3d 322, 324 (5th Cir. 2001) ("[W]hen entry of default is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." (quoting Williams v. Life Sav. & Loan, 802 F.2d 1200, 1203 (10th Cir. 1986)). "A plaintiff seeking the exercise of personal jurisdiction over a non-resident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima face case of jurisdiction." Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc., 593 F.3d 1249, 1257 (11th Cir. 2010) (quoting United Techs. Corp. v. Mazer, 556 F.3d 1260, 1274 (11th Cir. 2009)).

Likewise, an anti-suit injunction - relief Plaintiffs seek here - cannot issue against a party not subject to federal court jurisdiction. See Canon Latin Am., Inc. v. Lantech (CR), S.A., 508 F.3d 597, 601 (11th Cir. 2007) ("It is well-established among the courts of appeals that federal courts have some power to enjoin foreign suits by persons subject to federal court jurisdiction.") (citing Quaak v. Klynveld Peat Marwick Goerdeler

Bedrijfsrevisoren, 361 F.3d 11, 16 (1st Cir. 2004); China Trade & Dev. Corp. v. M.V. Choong Yong, 837 F.2d 33, 35 (2d Cir. 1987)).

To determine whether a foreign defendant like Kea is subject to personal jurisdiction, the Court performs a two-part analysis. See Diamond Crystal Brands, Inc. 593 F.3d at 1257-58. Jurisdiction must "(1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment . . . ." Id. (quotation omitted).

The Eleventh Circuit has held that "the Georgia long-arm statute does not grant courts in Georgia personal jurisdiction that is coextensive with procedural due process," but instead "imposes independent obligations that a plaintiff must establish for the exercise of personal jurisdiction that are distinct from the demands of procedural due process." Id. at 1259. "[C]ourts must apply the specific limitations and requirements of O.C.G.A. § 9-10-91 literally and must engage in a statutory examination that is independent of, and distinct from, the constitutional analysis to ensure that both, separate prongs of the jurisdictional inquiry are satisfied." Id. at 1263.

Plaintiffs make few allegations supporting jurisdiction over Kea. Paragraph eight of the Complaint alleges that Kea is a British Virgin Islands company limited by shares and a citizen of the British Virgin Islands for diversity purposes. Paragraphs ten and eleven state:

> 10. Furthermore, as set forth in more detail below, Kea intends to act directly *in rem* against assets owned as of record by Plaintiffs, including Plaintiff's [sic] real property and fixed assets. The assets in question reside in this District. Thus, this Court holds jurisdiction *in rem* over the assets against which Kea has stated its intent to enforce its putative rights.
>
> 11. Finally, over the course of the past year Kea has taken putative enforcement actions directed against Plaintiffs and their assets in this District, and Kea's principal and ultimate beneficial owner – and potential *alter ego* – Owen Glenn has litigated in the United States (among several other jurisdictions) a portion of the underlying dispute that gave rise to the U.K. judgment upon which Kea now purports to act. Accordingly, Kea may reasonably expect – and visibly has in fact expected and intended – to proceed in court in the United States in the matter at bar.

(Compl., ¶¶ 10-11.)  Plaintiffs also allege that Owen Glenn's litigation in California establishes "a commonality of interest between Glenn and Kea for purposes of United States jurisdiction over Kea upon the action now at bar." (Id., ¶ 27.)  Finally, Plaintiffs highlight Kea's anticipated proceedings in the United States against Plaintiffs.  (See id., ¶ 29.)  These allegations are insufficient to satisfy both Georgia's long-arm statute and procedural due process.[1]

---

[1] Plaintiffs also emphasize that they and their property are subject to jurisdiction in this District. (See, e.g., Compl., ¶ 10; Mem. in Supp. of Pls.' Mot. for Default J., Doc. 18, ¶ 34.) That fact is irrelevant to whether the Court has personal jurisdiction over Kea.

8

A. Georgia's Long-Arm Statute

Georgia's long-arm statute is codified at O.C.G.A. § 9-10-91. It provides for jurisdiction over nonresidents that:

(1) Transact[] any business within this state;

(2) Commit[] a tortious act or omission within this state, except as to a cause of action for defamation of character arising from the act;

(3) Commit[] a tortious injury in this state caused by an act or omission outside this state if the tortfeasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

(4) Own[], use[], or possess[] any real property situated within this state . . . .

O.C.G.A. § 9-10-91. The statute provides for two more jurisdictional bases related to domestic relations that are not relevant in this case.

The Complaint does not allege facts supporting any of the jurisdictional bases set out in Section 9-10-91. It does not allege that Kea has conducted *any* business in Georgia, committed a tortious injury in Georgia, or owns, uses or possesses real property in Georgia. Thus, Plaintiffs fail to satisfy the Georgia

long-arm statute portion of the personal jurisdiction inquiry. This alone would be sufficient grounds for denying the motion for default judgment, but in an abundance of caution the Court will consider the procedural due process prong too.

B. Procedural Due Process

The Due Process Clause permits jurisdiction only over defendants who have established "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414 (1984) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

While the minimum contacts analysis can be complex and is "immune to solution by checklist," in this case it is simple. See Sloss Indus. Corp. v. Eurisol, 488 F.3d 922, 925 (11th Cir. 2007). As explained above, Plaintiffs do not allege that Kea has had any contact with this District; thus, the Complaint fails to establish *in personam* jurisdiction.

Plaintiffs also suggest an *in rem* theory of jurisdiction, highlighting the presence of their assets in this District and that those assets are what Kea might[2] seek in the U.K. Case. "[I]n

---

[2] Despite Plaintiffs' allegations and argument otherwise, based on the record before the Court Kea has not demonstrated an intent to pursue enforcement of its U.K. judgment against Plaintiffs' assets

10

order to justify an exercise of jurisdiction *in rem*, the basis for jurisdiction must be sufficient to justify exercising jurisdiction over the interests of persons in a thing." Shaffer v. Heitner, 433 U.S. 186, 207 (1977) (quotation omitted). The International Shoe minimum contacts standard applies when considering whether *in rem* jurisdiction exists. See id.; Lyons Mfg. Co. v. Gross, 519 F. Supp. 812, 818 (S.D. Ga. 1981). Besides failing to meet the minimum contacts standard, the relief Plaintiffs seek in this case does not touch Kea's interest in Plaintiffs' assets. Rather, if granted, Plaintiffs' injunction and declaratory relief would affect only Kea's ability to pursue litigation against Plaintiffs in the U.K. Therefore, there is no *in rem* jurisdiction.

## IV. CONCLUSION

A district court may not enter a default judgment without personal jurisdiction over the defendant. Plaintiffs have failed to allege any connection whatsoever between Defendant Kea and this District, or to otherwise demonstrate the existence of personal jurisdiction in this Court. Upon the foregoing, Plaintiffs' motion for default judgment (Doc. 17) is **DENIED WITHOUT PREJUDICE**. To

---

in this District. In fact, in a transcript of a proceeding in the U.K. court, Kea and/or Owen Glenn's attorney stated in reference to this case, "I'm not applying to do the thing that [Plaintiffs] want us not to do." (Doc. 18-1, at 51-52.)

the extent that Plaintiffs can sufficiently establish personal jurisdiction over Defendant, Plaintiffs may submit such evidence and argument in a second motion for default judgment. Further, Plaintiffs' motion for preliminary injunction (Doc. 3) is **DENIED** for the same lack of personal jurisdiction.[3]

**ORDER ENTERED** at Augusta, Georgia this 4th day of June, 2020.

```
                              _____
                              J. RANDAL HALL, CHIEF JUDGE
                              UNITED STATES DISTRICT COURT
                              SOUTHERN DISTRICT OF GEORGIA
```

---

[3] "Because [Federal Rule of Civil Procedure] 65 confers no jurisdiction, the district court must have both subject matter jurisdiction and in personam jurisdiction over the party against whom the injunction runs . . . ." Enterprise Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana, 762 F.2d 464, 470 (5th Cir. 1985) (internal quotation omitted); see also Visual Scis., Inc. v. Integrated Commc'ns Inc., 660 F.2d 56, 59 (2d Cir. 1981) ("A court must have in personam jurisdiction over a party before it can validly enter even an interlocutory injunction against him.").